### BENDERNAGLE vs. COCKS.

Where a party hath several demands or existing causes of action growing out of the same contract, or resting in matter of account which may be joined and sued for in the same action, they must be joined; and if the demands or causes of action be split up and a suit brought for part only, and subsequently a second suit for the residue, the first action may be pleaded in abatement or in bar of the second action.

It was accordingly holden in this case, where there were breaches of several and distinct covenants contained in the same instrument, and a suit was brought claiming damages for some of the breaches, and subsequently a second action was commenced claiming damages for other breaches, all of the causes of action having accrued at the time of the bringing of the first suit, that the first action might be pleaded in abatement of the second action.

The same rule, it seems, extends to several actions against the same person for the same wrong; but not to several and distinct trespasses or wrongs.

ERROR from the New York common pleas. Cocks sued Bendernagle for *breaches of certain covenants* on the part of Bendernagle in an indenture of lease executed by him to Cocks. Bendernagle had covenanted to pay the one-third of the manure which should be brought by Cocks upon the demised premises, (a farm) during the term, and also to pay him $25 for ploughing and working a certain lot on the premises during the first year of the term. Cocks averred that he had brought on manure to the value of $250, and had ploughed the field, but that Bendernagle had refused to perform the covenants on his part. This suit was commenced in April, 1835. Bendernagle pleaded *in abatement* that in February, 1834, Cocks brought an action of covenant against him in the New York common pleas, upon the *same identical indenture of lease* whereon the present action was brought, *for the alleged breach by Bendernagle of certain covenants in the indenture contained on his part to be done and performed;* that such action was removed by

ALBANY,
January, 1838.

Bendernagle
v.
Cocks.

certiorari into this court, where it was still pending. Cocks replied that the covenants for the breach of which the first suit was brought were *other, distinct* and *different* from the covenants for the breach of which this suit was brought. Bendernagle *demurred* to the replication. The common pleas adjudged the replication to be good, and rendered judgment in favor of the plaintiff. The defendant sued out a writ of error. The cause was submitted on written arguments.

*C. O'Connor,* for the plaintiff in error, cited *Manderville* v. *Welch,* 5 Wheaton, 277 ; *Bagot* v. *Williams,* 3 Barn. & Cres. 235 ; *Guernsey* v. *Carver,* 8 Wendell, 492 ; *Stevens* v. *Lockwood,* 13 id. 646.

*W. S. Sears,* for the defendant in error, cited 9 Coke, 290 ; 4 Maule & Selw. 183 ; *Phillips* v. *Berwick,* 16 Johns. R. 136, and cases there cited ; and *Hale* v. *Andrews,* 6 Cowen, 226.

*By the Court,* COWEN, J. The point raised by this demurrer has been very fully considered in the course of the conflicting opinions delivered by two of the learned judges in the court below, and the arguments of counsel here. We have been furnished with all the New-York authorities, and nearly all the English which bear upon the point. In respect to separate and independent contracts, the books agree that separate actions, whether the proper form be covenant, assumpsit or debt, may be brought at the pleasure of the party, subject only to the power of the courts to direct them to be consolidated in proper cases. *Phillips* v. *Berwick,* 16 Johns. R. 136. *Badger* v. *Titcomb,* 15 Pick. 409. *Rex* v. *The Sheriff of Hertfordshire,* 1 Barn. & Adolph. 572. With respect to instalments of money due at successive days under the same contract, a difference is taken, that if the action be debt, it must be brought for the whole, *Rudder* v. *Price,* 1 H. Black. 550 ; per Wilde, J. 15 Pick. 413 ; but if it be covenant or assumpsit, the action may be for each successive instalment as it falls due. *Cook*

v. *Whorwood*, 2 Saund. 337. *Badger* v. *Titcomb*, 15 Pick. 409. *Ashford* v. *Hand*, Andr. 370. And so, without doubt, as to any other breaches of several covenants or promises contained in the same contract, provided the action be brought before the subsequent breaches are committed. The cases all agree that where the demand is entire, a recovery for part, bars a suit for the whole. *Willard* v. *Sperry*, 16 Johns. R. 121. *Brockaway* v. *Kinney*, 2 id. 210. *Farrington* v. *Payne*, 15 id. 432. *Bates* v. *Quattebom*, 2 Nott & M'Cord, 205. *Hite* v. *Long*, 6 Rand. 457. *Smith* v. *Jones*, 15 Johns. R. 229. *Miller* v. *Covert*, 1 Wendell, 487. *Ingraham* v. *Hall*, 11 Serg. & Rawle, 78. *Fetter* v. *Beale*, 1 Salk. 11. *Barwell* v. *Kensey*, 3 Lev. 179. The difficulty lies in discriminating between entire and several demands. I have been able to find but one case which holds that there being several breaches of the same contract already committed, the party may bring a several action for each. That is the case of *Badger* v. *Titcomb*, 15 Pick, 409, which will be noticed by and by. On the contrary, I think the decisions of this court in respect to accounts involve the opposite doctrine. *Guernsey* v. *Carver*, 8 Wendell, 492. *Colvin* v. *Corwin*, 15 id. 557. They go upon the ground that dealings between parties in a current account make but one entire contract; and therefore a suit and recovery for part, the whole being due, shall be a bar to the whole. It is an entire demand, incapable of division. Per Nelson, J., 8 Wendell, 494. Yet every additional item in the account is in the nature of a distinct instalment. The obvious principle is, that several claims already due under the same contract, shall be deemed one entire demand or cause of action. In the late case of *Colvin* v. *Corwin*, 15 Wendell, 557, the two demands were distinct as to time and place, being several purchases of lottery tickets by the defendant at two different lottery offices of the plaintiffs, and of different agents; yet both being due, it was held that an action for one item barred a subsequent suit for the other. The chief justice speaks of the two suits as the splitting of a small demand. Yet suppose that one of these items had not been due at the time of the first suit, clearly the objection would have

ALBANY,
January, 1838.

Bendernagle
v.
Cocks.

been removed. I venture to say that the courts have, with few exceptions, acted upon this distinction ever since *Girling* v. *Aldas*, 2 Keb. 617, A. D. 1670, in B. R. 22 Car. 2. That case is thus reported : " Coleman opposed a prohibition to the honor of Ale on splitting of actions because the party was insolvent, and the contracts *really several* on *several deliveries* of ale by Maltster to Alewife. *Sed non allocatur*, but *per curiam* a prohibition must be awarded. If the causes *may* be joined in one action they *must*, and a prohibition was awarded." In the late case of *M'Laughlin* v. *Hill*, 6 Verm. R. 20, without denying the general rule, the court saved from its operation those items of account which were not due, and therefore not submitted to the justice in the first suit. *Avery* v. *Fitch*, 4 Conn. R. 362, S. P. The same rule, with another proper exception, will be found to have been acted upon and illustrated in *Bagot* v. *Williams*, 3 Barn. & Cress. 235. I admit that *Badger* v. *Titcomb*, 15 Pick. 409, is opposed to this rule, and goes the whole length of sustaining the replication of the plaintiff below. It is sufficient to reply, that in doing so, it was necessary, as was done in that case, to deny that *Guernsey* v. *Carver* was rightly decided by this court. The learned judge who delivered the opinion of the court in the former case observes, " We know of no principle of law, nor any other decided case on which the decision in that case [*Guernsey* v. *Carver*] can be sustained." Were there such a total absence both of principle and authority as is here intimated, we might well distrust the propriety of farther adhering to that decision. But with great deference, I had supposed *Girling* v. *Aldas*, before cited from 2 Keb. to be plain in principle against the splitting up of accounts or different demands arising under ⸢the same contract ; and to go the length of absolutely forbidding it to be done. This will be seen more distinctly by the report of the same case in 1 Sid. 73, by the title of *Girling* v. *Alders*. " The case was one contracted with another for divers parcels of malt, the money to be paid for each parcel being under forty shillings ; and he levied divers plaints thereupon. Wherefore, the court here granted a prohibition ; because, though they be

several contracts, yet for as much as the plaintiff *might* have joined them all in one action, he ought so to have done, and sued here, and not put the defendant to an unnecessary vexation, no more than he can split an entire debt into divers, to give the inferior court jurisdiction *in fraudem legis.*" The same rule is put in the same book. *Anon.* 65. In one view, and taken literally, these books may seem to go too far ; but although they speak of several contracts, they evidently mean separate demands growing out of one general contract, or a course of dealing or account current between the parties. For the purposes of an action they make but one demand. It is the same thing, in effect, whether the splitting of this demand be restrained by prohibition or by allowing the first suit to be pleaded in abatement or in bar of the second. It is but a difference in the remedy. *Bagot* v. *Williams* adopts the latter remedy. Lord Bagot's steward (Williams) had received various sums of money at different times, in 1822, for the use of his principal. The sums which he received for sales of timber exceeded £3400. This, with two other sums, made in the whole £7000, which Lord Bagot's agent knew, when he sued in debt for only £4000, in the name of Lord Bagot against Williams in the court baron of Ruthin. Judgment passed by default, and the plaintiff's agent verified and took judgment for £3400 only. After that judgment was obtained, the plaintiff's agent discovered that the defendant had also received £46 for rent due at christmas, 1821. On a suit being brought in the K. B. for the balance of the account, the former suit was pleaded in bar as being for the same identical cause of action, on which issue was joined; and the plea was sustained on evidence of these facts, except as to the £46. Garrow, B., who tried the cause, was of opinion " that whatever constituted a subsisting debt at the time when the proceeding in the inferior court was instituted, and was known to be so by the agent who managed the whole transaction, was to be considered as included in and constituting one entire cause of action," and he directed a verdict for the plaintiff for only £46. On motion for a new trial, Abbott, Ch. J., assumed that the form of action in the court below

might have been what he calls a *concessit solvere*, including the same causes of action which were the subject of the second suit; and he considered the acts of the agent with a knowledge of all the facts, as equivalent to a submission of the same facts to a jury, and their finding a balance of only £3400. Bayley, J., took a broader ground, and I think went the same length with the learned baron who tried the cause. He observes, " In this case Lord Bagot, at the time when the first action was commenced, had a demand on the defendant, not for one specific sum of money, but for different sums of money received by the defendant on his account, from different persons and at different times. His agent knew that he had claims in respect of all the sums now claimed except £46; and having that knowledge, he formed an opinion that £3400 was the whole sum that Lord Bagot ought to claim; and if he acted upon that opinion, it is much the same thing as if the plaintiff in a cause at *nisi prius* having a demand of £60, consisting of three sums of £20, which became due to him at different times, consented to take a verdict for £40. If the jury in such a case, at the suggestion of the plaintiff, reduced the verdict to £40, he would be bound by it; and could not afterwards bring a second action for the other £20. It seems to me that he is equally bound by his own act in this case, as he would have been by a verdict of a jury in the other, and that having chosen to abandon his claim once, he has done it forever." Holroyd, J., concurred, and a new trial was denied. Now I understand a majority of the judges here to put the case upon the simple facts that Lord Bagot had a claim for several sums resting in account, and chose to sue for some of them. Accordingly, in *Bunnel* v. *Pinto*, 2 Conn. R. 431, where the parties submitted their accounts to arbitrators, who awarded, and the plaintiff sued for 40 dollars not included in the award, this was held a bar to the action; and Swift, Ch. J., remarks, that " a book account is an indivisible claim, as much as a promissory note; and a party may as well pretend that he kept back a part of his claim on a note, and then, after the award, bring a suit upon it." Hosmer, J., and the rest of the court, it is true, do not in

ALBANY,
January, 1838.

Bendernagle
v.
Cocks.

terms accede to the proposition; but in the subsequent case of *Avery* v. *Fitch*, 4 Conn. R. 362, the whole court, with Hosmer, (now) Ch. J., at their head, not only adopt and repeat it, but I think take a distinction which goes the whole length of maintaining the plea now in question. To an action on book, the plea was that by writ dated July 9th, 1819, the plaintiff brought an action on book against the defendant demanding seven dollars, and on the general issue recovered judgment. Replication that the account of seven dollars accrued and fell due after the commencement of the suit in which the recovery was pleaded. Hosmer, Ch. J., delivered the opinion of the court. He said, "For the same cause of action, no person ought to recover twice; and if it might have been exhibited in a former suit as part of a book debt then litigated, it must be considered as extinguished. A man cannot be permitted to sever a book debt and multiply suits unnecessarily. The case of *Lane v. Cook*, 3 Day, 255, settled this principle: that a judgment in an action of book debt is conclusive, ' as to all matters on book subsisting between the parties, *at the date of the writ on which judgment was rendered.*' But a cause of action which originated *posterior* to the commencement of a suit cannot be affected by the judgment rendered in it; as it was not exhibited in evidence, nor could from any part of the matter on which the suit was instituted." Looking, as I think we must, on the several defaults to pay items, as so many successive breaches of a single contract, we here have an authority for saying that all such breaches are but parts of one indivisible demand, so far as they were committed at the commencement of the suit.

I must, therefore, be permitted to believe, that *Guernsey* v. *Carver* is not without principle and authority in its support; and that it was very properly followed in *Stevens v. Lockwood*, 13 Wendell, 644, and other cases in this court. I admit that the case of *Rex* v. *The Sheriff of Hertfordshire*, 1 Barn. & Adolph. 672, is not without an appearance of conflict with the other English cases. A. became indebted to B., less than 40s., (the jurisdiction of the sheriff's court) for carriage of goods; and less than 40s. for like

ALBANY,     carriage one month after.  B. sued for each separately in
January, 1838.  the sheriff's court ; and the king's bench held the two sums

Bendernagle   to be distinct debts, and denied a prohibition.  *Girling* v.
v.          *Alders* was cited in support of the motion ; nor was its au-
Cocks.      thority denied ; nor was that of *Bagot* v. *Williams*.  Two
such remote and  distinct  instances of dealing might have
been viewed as not coming within the rule which forbids
the splitting of a continuous account ; much less as making
parts of one express contract.  The rule may differ in its
results, accordingly as courts give it a more restricted or a
more liberal application.  *Rex* v. *The Sheriff of Hertford-
shire,* seems to be an instance of the former ; *Colvin* v. *Cor-
win,* in this court, of the latter.  The two cases may not
stand together in their circumstances ; but the rule itself
appears to be as fully recognized in England as in this
state ; and being of a remedial tendency by contributing to
reduce a vexatious multiplicity of suits, it should be liberally
applied.  No such uncertainty, however, can arise in apply-
ing the rule to different claims arising upon the same express
contract.

The case of *Young* v. *Munby,* 4 Maule & Selw. 183, cited
for the defendant in error, would be in point against this
plea, if the action had been on contract.  But it was an ac-
tion *on the case* brought by the rector against the executor
of his predecessor upon the law and custom of England, to
recover damages for dilapidations of the chancel and a pew.
The plea in bar was that the plaintiff had before sued and
recovered against the same defendant for not repairing the
rectory house, out houses and cottages belonging to the rec-
tory, and the gates and hedges upon the glebe lands.  The
replication denied that the damages now sought to be recov-
ered were in any manner included in the former declara-
tion, and that the same or any part thereof were recovered
in the former action.  On demurrer the plea was held bad,
but the action was evidently for a mere *tort*.  All the in-
stances put by Tindal, who argued in support of the plea,
are founded upon cases relative to torts ; and Lord Ellen-
borough, C. J., said, " They are different and independent
*injuries* in respect of the different parts.  The *injury* from

the dilapidation of the house is one thing, that from the dilapidation of the chancel is another." It is true the same thing may be said in respect to different breaches of the same contract; but there the parties have tied them together and made them one by their own agreement.

I admit that the rule does not extend to several and distinct trespasses or other wrongs, *White* v. *Moseley*, 8 Pick. 356; nor, as we have seen, to distinct contracts. It goes against several actions for the same wrong, and against several actions on the same contract. All damages accruing from a single wrong, though at different times, make but one cause of action; and all debts or demands already due by the same contract make one entire cause of action. Each comes under the familiar rule, that if a party will sue and recover for a *portion*, he shall be barred of the residue. Proof of that fact would sustain the common issue as presented in *Bagot* v. *Williams*, that the plaintiff had before impleaded the defendant, and recovered for the same identical cause of action, &c.

The plea of a former judgment in an action for a part of such entire demand, being valid as a plea in bar to the whole, it follows that a plea of the pendency of such an action is good in abatement for the whole. Both stand upon the same principle; the only difference lies in the form of the pleas and the effect of the judgments respectively.

The judgment of the court below must be reversed.