**UNION REALTY CO., Inc., et al. v.
AHERN et al.**

No. 1267.

Municipal Court of Appeals for the
District of Columbia.

Argued Nov. 3, 1952.

Decided Dec. 4, 1952.

Thomas S. Jackson, Washington, D. C.,
with whom Louis M. Denit, Martin R. Fain
and P. Baxter Davis, Washington, D. C.,
were on the brief, for appellants.

John W. Cragun, Washington, D. C., with
whom Jean F. Dwyer, Washington, D. C.,
was on the brief, for appellees.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellee Edward V. Ahern, acting for himself and his wife, appellee Lucretia A. Ahern, entered into a contract with appellant Union Realty Co. for the purchase of a house and lot in Montgomery County, Maryland. The contract provided that the property would be conveyed "free of encumbrance" except for a first deed of trust to be executed by the purchasers, and further that "Rents, taxes, water rent, insurance and interest on existing encumbrances, if any, and operating charges are to be adjusted to the date of transfer. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the Treasurer of the County, except that assessments for improvements completed prior to the date hereof, whether assessment therefor has been levied or not, shall be paid by the seller, or allowance made therefor at the time of transfer." Settlement of the contract was had on January 19, 1948, at the office of appellant The Suburban Title and Investment Corporation. A settlement clerk of the title company prepared settlement sheets for the parties which were approved by them. The purchasers' settlement sheet showed various debits and credits and the balance required as cash for completion of the purchase. The purchasers paid the balance and the deed and deed of trust were executed. Thereafter the title company issued to the purchasers a certificate of title, certifying title in the purchasers, "good in fee simple * * * subject only to such taxes and assessments, if any, as may be due and unpaid, and to such covenants, liens, encumbrances, objections, defects or other matters as are noted or mentioned in the annexed Schedule 'A.'" Schedule A contained three items, first, a covenant running with the land which has

no bearing in this case, second, the deed of trust executed by the purchasers, and, third, the statement: "The Treasurer reports State and County Taxes paid through the year ending June 30, 1948.".

On December 31, 1948, the purchasers were notified by the Washington Suburban Sanitary Commission [1] that their property was subject to an annual front foot benefit charge for water main and sewer amounting to $22.32. Upon investigation they learned that the water main and sewer had been completed approximately a year and a half prior to the purchase of the property and that the front foot assessment would be levied on the property annually for a period of forty years. The purchasers then brought this action against the realty company and the title company to recover the total amount of front foot benefit charges apportioned to their property, which amount the parties stipulated is $741.23. From judgment against them in favor of the purchasers, the realty company and the title company have appealed.

The first point raised on the appeal is that the front foot benefit charge is a lien on the real estate only to the extent of the annual charges. The correctness of this contention appears established in District Title Ins. Co. v. United States, 83 U.S.App.D.C. 335, 169 F.2d 308, although a contrary ruling was apparently made in the prior case of Baker v. Smith & Gottlieb, Inc., 76 U.S.App.D.C. 403, 132 F.2d 18. [2] However, the fact that the future annual charges did not constitute a lien on the property does not relieve the seller from his obligation under the contract "that assessments for improvements completed prior to the date hereof, whether assessment therefor has been levied or not, shall be paid by the seller, or allowance made therefor at the time of transfer." The improvements had been completed long prior to the making of the contract and we think

---

1. The Washington Suburban Sanitary Commission is a municipal corporation operating in parts of Prince George's and Montgomery Counties surrounding the District of Columbia. Its creation and functions are described in Dahler v. Washington Suburban Sanitary Commis-

sion, 133 Md. 664, 106 A. 10, and Washington Suburban Sanitary Commission v. Noel, 155 Md. 427, 142 A. 634, appeal dismissed 278 U.S. 573, 49 S.Ct. 94, 73 L. Ed. 513.

2. There appears to be no Maryland authority on this subject.

it is clear that the seller was bound to pay for them even though not assessed and regardless of the question of when the assessments became or would become a lien on the property. This was clearly held· in Baker · v. Smith & Gottlieb, Inc.,· supra, where, aside from the question of the lien and the obligation to convey free of encumbrances, it was said: "The contract, as we have seen, required the seller to pay any assessments, whether levied or not, for special improvements already made, and admittedly the seller has not discharged this obligation." And it makes no difference that under Maryland law the annual assessments are collected in the same manner as ordinary taxes. However assessed and however collected, the front foot charges are for improvements completed prior to the contract and the seller bound itself to pay for them.

■■■ With respect to the title company a different situation is presented. Its certificate of title insurance certified that according to the land records for Montgomery County the title was good in fee simple "subject only to such taxes and assessments, if any, as may be due and unpaid, and to such covenants, liens, encumbrances, objections, defects or other matters as are noted * * *." The title company's liability is controlled by its certification.[3] In our opinion the front foot benefit charges not then assessed were neither liens nor encumbrances and there was no breach of the guaranty of title.[4] The certificate made clear that taxes and assessments were excepted from its coverage at least so far as they did not constitute liens on the property.

■■■ The purchasers argue that even if there was no breach of the guaranty of title, the title company is still liable for breach of implied warranty or negligence in failing

to ascertain, or, if it did ascertain, then. in failing to inform the purchasers of the· future front foot charges which would be· levied on their property. We find no basis for this contention. The title company in its certificate of title and on its settlement. sheet disclaimed responsibility for the cor-· rectness of information relating to taxes. and assessments and we see no invalidity in. such disclaimer. The settlement sheet· examined and approved by the purchasers. contained an adjustment to time of transfer· of "Front Foot Benefit Chg." If the purchasers did not understand this item they· could have made inquiry. In the absence· of such inquiry, the title company could assume they were fully informed as to the· nature of the front foot charges. We do· not think that it was the duty of the title· company to undertake to advise the purchasers as to their legal rights under their· contract with respect to the front foot· charges.

■■■ One further point remains to be· considered. Both appellants contend that· regardless of all other questions the purchasers are barred from any recovery because of an account settled. Argument is made that when the parties met at the title: company and a settlement sheet was prepared and submitted to the purchasers who. approved and signed it and paid over the· balance shown thereon, that this constituted an account settled. An account settled, as. we understand it, means an account stated. which has been paid. We doubt that the. settlement sheet constituted an account stated, but assuming that it did, an account stated or settled is merely prima facie correct and may be impeached for mistake or· error in law or in fact.[5] The one who attacks it must carry the burden of proof,[6] but to impeach an account stated for error· or mistake it is not necessary that the error· or mistake be mutual.[7] In the present case·

3. Real Estate Title Ins. Co. v. District of Columbia, 82 U.S.App.D.C. 170, 161 F.2d 887.

4. Metropolitan Life Ins. Co. v. Union Trust Co., 283 N.Y. 33, 27 N.E.2d 225, 128 A. L.R. 370.

5. Hager v. Thompson, 1 Black 80, 17 L. Ed. 41; Riley v. Mattingly, 42 App.D.C.

290; Conville v. Shook, 144 N.Y. 686, 39 N.E. 405. See also Restatement, Contracts § 422; Williston, Contracts § 1864..

6. Lockwood v. Thorne, 18 N.Y. 285, 292.

7. Baldridge v. Flothow, 123 Neb. 218, 242 N.W. 414; Columbia Building & Loan Ass'n v. Gill, Mo.App., 285 S.W. 181.

the trial court could have found that the purchasers in approving the settlement sheet did so in error and in mistaken understanding of the significance of the item relating to front foot charges. Whether it be called error of fact or law is immaterial. The purchasers' contract required the seller to pay for all improvements completed prior to the date of the transaction. It could only have been by mistake that the purchasers accepted a credit of $1.13 when in fact and in law they were entitled to a credit of $741.23.

Judgment against Union Realty Co., Inc., affirmed.

Judgment against The Suburban Title and Investment Corporation reversed.